FILED

2007 DEC 18 PM 3: 40

NORTHERN DISTRICT OF OHIO
CLEVELAND

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| THOMAS J. WOZNIAK, | ) | CASE NO.  1:07 CV 2927 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| JAMES E. SINSEL, | ) | |
| | ) | |
| Defendant. | ) | |

Pro se plaintiff Thomas J. Wozniak filed the above-captioned in forma pauperis

action on September 25, 2007 against defendant James E. Sinsel. Mr. Wozniak asserts that Mr.

Sinsel engaged in a series of fraudulent acts in violation of "RICO,18 U.S.C. §§ 1961-1964." Mr.

Wozniak seeks an order from this court awarding him "compensatory, treble and punitive damages,

and prejudgment and post judgment interest, in an amount to be determined at trial." (Compl. at 9.)

*Background*

On some undisclosed date in 2005, defendant James Sinsel allegedly moved from

Tampa, Florida to the greater Cleveland area. He resided at Kirby Manor in Cleveland, Ohio where

he met Mr. Wozniak, who was also a Kirby Manor resident. Mr. Wozniak eventually moved from Kirby Manor to Fedor Manor in Lakewood, Ohio. He describes Fedor Manor as a "HUD subsidized senior residential facility. Each resident is required to make rental payments equal to thirty percent of their gross income." (Compl. at 7.)

In March 2005, Mr. Sinsel also moved to Fedor Manor as a retired veteran. Mr. Wozniak describes Mr. Sinsel "an intelligent person, with an extensive small business background, [who] has developed an engaging personality which he regularly and effectively employs to prevail upon his fellow retirees for short term loans, which he repays and then forthwith reborrows, building up their 'confidence' in his repayment 'integrity.' (Compl. At 1-2.) Mr. Sinsel would allegedly tell prospective lenders that he was the beneficiary of a trust with WesBanco of West Virginia, which provided a fixed amount of $350 per month until his death. Mr. Wozniak alleges that it was the defendant's "modis operandi . . . to lure a prospective lender into feeling secure that repayment can be obtained from trust fund disbursements (up to one year), then negotiate a loan for some amount less than the total repayment of $4200." As a means of repayment, Mr. Sinsel would provide twelve predated check drafts to the lender and have the trustee redirect the monthly disbursements to another bank account or direct that the disbursements be mailed directly to him after he vacated the area with only a P.O. box number address.

Mr. Wozniak alleges that the above outlined facts reflect Mr. Sinsel's "general scheme to defraud." His personal experience with Mr. Sinsel's alleged scheme started after Mr. Wozniak made a half-dozen loans in the amount of $100 each to the defendant. Each loan was repaid immediately or within one to two days of the due date.

On or about August 2, 2006, the dynamic of Mr. Sinsel's requests shifted when he

2

approached Mr. Wozniak in a state of desperation. Defendant was allegedly seeking a loan to cover a $1,200.00 shortfall on two checks he had written to Mountaineer Gambling Casino. Mr. Sinsel complained that if the checks were not honored he was at risk of losing his Platinum level privileges at the casino, as well as being banned from the casino and/or being physically harmed. He assured Mr. Wozniak that he had a loan commitment and guarantee of $3,500.00 from a "co maker" named Peter France, that would be available on September 3, 2006. "All that defendant Sinsel required from plaintiff, to 'save the situation'; was a bridge loan of twelve hundred ($1,200) between August 2, 2006 and September 3, 2006." (Compl. at 3.) Mr. Wozniak later learned that Mr. Sinsel had no loan commitment from Mr. France.

Mr. Wozniak agreed to the loan "[a]fter some eight hours of effort spread over several days reviewing defendants financial situation." (Compl. at 3.) In order to raise the funds for the loan, plaintiff pawned an oil painting for $1,000 and secured the balance through a payday loan. Mr. Sinsel drafted two checks payable to Mr. Wozniak in the amount of $1,200 for the loan principal and $300 for a service fee. The check in the amount of $300 was honored on September 1, 2006; however, the check for $1,200.00 was presented twice and denied both times for insufficient funds.

In the early hours of an October morning in 2006, Mr. Sinsel vacated his apartment at Fedor Manor. This left Mr. Wozniak with the financial burden of an unpaid loan. Once he learned that he had been deceived by Mr. Sinsel, "plaintiff suffered a seizure resulting in a paralysis of his right side of the body requiring hospitalization and extensive testing."[1] (Compl. at 6.) For the reasons stated below, this action is dismissed pursuant to 28 U.S.C. § 1915(e).

---

[1]It is peculiar, based on the facts alleged, that Mr. Wozniak states: "In fact it was defendant who called the Lakewood emergency unit and an ambulance was dispatched." (Compl. at 6.)

3

*Standard of Review*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996).

*Racketeer Influenced and Corrupt Organizations Act (RICO)*
*18 U.S.C. §1961 et seq.*

Under a civil RICO claim, it is unlawful to participate in the conduct of an enterprise's affairs through a pattern of racketeering or to conspire to violate any of the substantive provisions of Section 1962. See 18 U.S.C. § 1962(c) & (d). Section 1964 of Title 18 creates a private right of action for individuals to enforce the RICO statute. Under this section, a plaintiff must prove an injury resulting from "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 491 (1985); see also Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006). The injury which the plaintiff allegedly suffered, must result from, among other things, "a pattern of racketeering activity." The statute defines "racketeering activity" as certain acts indictable under Federal law, including the predicate mail and

---

[2]    A claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

wire fraud, 18 U.S.C. §§ 1341, 1343 that Mr. Wozniak alleges. See 18 U.S.C. § 1961(1)(B). The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343) Mr. Wozniak cites. 18 U.S.C. § 1961(1).

Once a plaintiff has pled at least two predicate acts, a pattern of racketeering activity must be established based on a showing "that the acts are related and that they amount to, or pose a threat of, continuing criminal activity." H.J. Inc. v. Northwestern Bell and Telephone Co., 492 U.S. 229, 239 (1989); 18 U.S.C. § 1961(5) (A "pattern" requires at least two acts of "racketeering activity" occurring within ten years of each other.); United States v. Alkins, 925 F.2d 541, 551 (2d Cir.1991) (predicate acts must be related and amount to or pose a threat of continued criminal activity). Thus, a simple allegation of two acts of "racketeering activity," without more, is not sufficient to establish a pattern. See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. at 238-44; United States v. Indelicato, 865 F.2d 1370, 1381 (2d Cir.1989). Mr. Wozniak alleges the predicate acts of mail fraud and wire fraud. However, as set forth below, he fails to properly plead these predicate acts.

## A. Mail Fraud

Allegations of mail fraud must be made with the particularity required by Federal Civil Rule 9(b). This rule provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." FED. CIV. R. 9. Mr. Wozniak's complaint fails to allege any fraudulent acts by which mail was used. Moreover, under the heightened pleading requirement set forth in Rule 9(b), the plaintiff fails to set forth "the content of [any] . . . items mailed and specify

how each of the items were false and misleading." Official Publications, Inc. v. Kable News Co., 692

F.Supp. 239, 245 (S.D.N.Y.1988) aff'd in part and rev'd in part, 884 F.2d 664 (2d Cir.1989). Under

the statute, mailings are essential for purposes of proving predicate mail fraud offenses underlying

a charge of racketeering activity under RICO. See United States v. Blanford, 33 F.3d 685, 702 (6th

Cir. 1994); see also Sedima, 473 U.S. at 481-82(civil RICO action does not require that there be a

prior criminal conviction for the conduct forming the predicate act; however, conduct must be

indictable). Accordingly, Mr. Wozniak fails to allege the predicate act of mail fraud.

**B. Wire Fraud**

        The elements of wire fraud are (1) a scheme to defraud and (2) use of interstate wire

communication to further that scheme. Hofstetter v. Fletcher, 905 F.2d 897, 902 (6th Cir.1988); see

also  United States v. Lemire, 720 F.2d 1327 (D.C. Cir.1983) (noting that the requisite elements of

wire fraud 18 U.S.C. § 1343 are identical to those of mail fraud 18 U.S.C. § 1341). To plead wire

fraud with particularity as required by Civil Rule 9(b), there must be some allegation that telephone

calls were made, the dates on which they were made, the identity of the persons making them, and

the nature of the alleged misrepresentation. See Qantel Corp. v. Niemuller, 771 F. Supp. 1361, 1369

(S.D.N.Y.1991); see also  Wexner v. First Manhattan Co., 902 F.2d 169, 172-73 (2d Cir.1990).

        With regard to Mr. Wozniak's reliance on wire fraud as a predicate criminal act, the

complaint fails to set forth any telephone conversations in which Mr. Sinsel knowingly made false

representations to the plaintiff. In addition, where, as here all parties are Ohio residents, even if there

were telephone communication between Mr. Wozniak and Mr. Sinsel "'all telephone calls are

presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not

stated." Bernstein v. Misk, 948 F.Supp. 228, 239 (E.D.N.Y. 1997); McCoy v. Goldberg, 748 F.Supp.

6

146, 154 (S.D.N.Y.1990)); see also United States v. Paredes, 950 F.Supp. 584, 587 n. 3 (S.D.N.Y.1996). There is no allegation that the jurisdictional prerequisite for invocation of the wire fraud statute has been satisfied. Accordingly, Mr. Wozniak has failed to plead the elements of fraud with sufficient specificity, and has thus failed to adequately allege or proffer evidence of the predicate acts of mail and wire fraud which form the basis of his RICO claim.

*Conclusion*

Based on the foregoing, plaintiff's application to proceed in forma pauperis is granted and this action is dismissed under section 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

Donald C. Nugent
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

December 14, 2007
Date

---

[3]     28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

7